UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIA M. HERNANDEZ,

        Plaintiff,

v.                                Case No.  8:11-cv-2613-T-27AEP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for a disability insurance benefits

("DIB") and Supplement Security Income ("SSI").  As the Administrative Law Judge's ("ALJ")

decision was based on substantial evidence and employed proper legal standards, I recommend

that the Commissioner's decision be affirmed.

### I.

**A.     Procedural Background**

Plaintiff filed an application for DIB and SSI (Tr. 174-82).  The Commissioner denied his

claims both initially and upon reconsideration (Tr. 76-83, 92-97).  Plaintiff then requested an

administrative hearing (Tr. 106).  Per her request, the ALJ held a hearing at which Plaintiff

appeared and testified (Tr. 41-71).  Following the hearing, the ALJ issued an unfavorable decision

finding Plaintiff not disabled and accordingly denying Plaintiff's claims for benefits (Tr. 14-40).

Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council

denied (Tr. 1-6, 11-13).  Plaintiff then timely filed a complaint with this Court (Dkt. No. 1).  The

case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.    Factual Background and the ALJ's Decision**

Plaintiff, who was born on March 28, 1962, claims disability beginning September 19,

2006  (Tr. 174, 178-79).[1]  She has an eleventh-grade education (Tr. 45, 46).  Her past relevant

work experience includes work as a home health aide, medical voucher clerk, and collection clerk

(Tr. 67).  She alleges disability due to diabetes, high blood pressure, high cholesterol, blindness

in her right eye, back pain, neck pain, sleep apnea, depression, and memory loss (Tr. 44-45, 201,

256).

After conducting a hearing and reviewing the evidence of record, the ALJ determined

Plaintiff had the following severe impairments: asthma, pulmonary fibrosis, diabetes,

degenerative disc disease of the lumbar and cervical spine, blindness of the right eye, obesity,

neuropathy, rheumatoid arthritis, and osteoarthritis (Tr. 19-28).  Notwithstanding the noted

impairments, the ALJ determined Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (Tr. 28).  The ALJ then concluded that Plaintiff retained a residual

functional capacity ("RFC") to perform a limited range of sedentary work such that Plaintiff could

occasionally lift ten pounds; could sit for six hours during an eight-hour workday; could stand for

two hours during an eight-hour workday with normal breaks; could occasionally balance, stoop,

---

[1]  Although Plaintiff's application for SSI claims a disability onset date of September
1, 2006, her application for DIB, disability field reports, and the ALJ's decision assert a
disability onset date of September 19, 2006 (Tr. 17, 174, 178-79, 197).

2

kneel, and crouch; should never climb ladders, ropes, or scaffolds or crawl; should avoid work environments with concentrated exposure to cold and heat; and is unable to perform jobs that require far acuity (Tr. 28-32).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's statements concerning her impairments and their impact on her ability to work and determined that they were not entirely credible in light of the findings made on examination (Tr. 29).  The ALJ found that inconsistencies existed between Plaintiff's allegations of disabled symptomatology and the objective medical evidence and therefore did not fully credit Plaintiff's subjective complaints (*id.*).  Considering her noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a collection clerk and as a medical voucher clerk (Tr. 32).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 33).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

3

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given

to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues here that the ALJ erred by failing to properly consider the medical opinions and failing to properly assess the credibility of Plaintiff's subjective complaints.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.    Medical Opinions

Plaintiff asserts the ALJ failed to properly consider the opinions of Drs. Deborah Burke, Howard Jackson, and Lourdes Loreto in making his conclusions about Plaintiff's RFC.  At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   To

5

determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record.

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating

6

physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when it supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

### 1.    Dr. Burke

In determining Plaintiff's RFC, the ALJ considered the opinion of Dr. Burke, a treating neurologist, from March 6, 2007 (Tr. 31, 781-86).  After a final evaluation of Plaintiff, Dr. Burke diagnosed Plaintiff with chronic cervical strain/sprain/myofascial pain syndrome and chronic lumbosacral strain/sprain/myofascial pain syndrome and opined that Plaintiff would require long-term therapy, including physical therapy modalities or nerve blocks along with symptomatic treatment for temporary relief of the symptoms and chronic pain (Tr. 784).  Dr. Burke found these injuries to be permanent and opined that Plaintiff would have an increased likelihood of accelerated osteoarthritic changes in the affected anatomical areas (Tr. 785).  As the ALJ noted, Dr. Burke stated that Plaintiff should avoid repetitive lifting, bending, pulling, pushing, prolonged sitting or standing, jumping, or jarring activities (Tr. 31, 785).  Further, Dr. Burke found that Plaintiff would be limited as far as recreation and daily living activities as a result of her injuries and that the injuries may affect Plaintiff's future employment capabilities (Tr. 785).

As set forth above, after considering the medical evidence of record, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work and that Plaintiff could occasionally lift ten pounds; could sit for six hours during an eight-hour workday; could stand for two hours during an eight-hour workday with normal breaks; could occasionally balance, stoop,

kneel, and crouch; should never climb ladders, ropes, or scaffolds or crawl; should avoid work environments with concentrated exposure to cold and heat; and is unable to perform jobs that require far acuity (Tr. 28).  In making that determination, the ALJ considered the findings and opinion of Dr. Burke.  Namely, the ALJ found that many of the limitations identified by Dr. Burke were contained in the RFC but that Dr. Burke did not clearly indicate what amount of weight Plaintiff should lift or which extremities were limited in pushing and pulling (Tr. 31).[2] As a result of these omissions, the ALJ afforded Dr. Burke's opinion little weight (*id.*).

Plaintiff contends that the ALJ failed to properly consider the restriction regarding "prolonged sitting or standing" set forth by Dr. Burke and erred by giving Dr. Burke's opinion little weight due to the noted omissions (*see* Tr. 785).  As to the limitation regarding prolonged sitting and standing, the ALJ accounted for such a limitation by restricting Plaintiff to a limited range of sedentary work and to sitting for six hours with normal breaks and standing for two hours with normal breaks during an eight-hour workday (Tr. 28).  With respect to the assignment of little weight to Dr. Burke's opinion, the ALJ noted that most of the limitations set forth by Dr. Burke were encompassed by the RFC assessment but that Dr. Burke did not specify what amount of weight Plaintiff could lift or which extremities were limited in pushing and pulling (Tr. 31).  Accordingly, in rendering his decision, the ALJ incorporated the limitations suggested by Dr. Burke regarding a need for Plaintiff to avoid repetitive lifting, bending, pulling and pushing, prolonged sitting or standing, jumping, or jarring activities but did not afford her opinion much

---

[2]  The ALJ inadvertently referred to Dr. Burke as a male rather than a female.  This error is harmless and does not warrant remand as the ALJ properly considered Dr. Burke's opinion and findings.

weight as she did not illuminate the degree to which Plaintiff was limited in the ability to work.

The medical evidence of record must allow the ALJ to determine the nature and severity of a

claimant's impairments.  20 C.F.R. §§ 404.1513(e)(1), 416.913(e)(1).  Given the omissions of

Dr. Burke, the ALJ could not determine the severity of Plaintiff's limitations.  By finding that

Plaintiff retained a RFC to perform less than sedentary work with the noted restrictions, however,

the ALJ found that Plaintiff could lift no more than ten pounds occasionally and that Plaintiff

would not be required to work in a position that required pushing or pulling of arm or leg

controls.  Indeed, as the Regulations define it,

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.  Jobs
> are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).[3]

The RFC thus comports with the opinion expressed by Dr. Burke.  As such, the ALJ did

not reject Dr. Burke's opinion.  Instead, the ALJ simply noted that Dr. Burke did not identify

weight limitations for lifting or identify which extremities would be affected by the pushing and

pulling limitations.  In that regard, the ALJ afforded little weight to the opinion of Dr. Burke (Tr.

---

[3]  In contrast, for instance, "light work" requires "lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a
good deal of walking or standing" or "sitting most of the time with some pushing or pulling of
leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b).

31).[4]  Accordingly, the ALJ properly considered Dr. Burke's opinion, incorporated the limitations found by Dr. Burke into Plaintiff's RFC, and assigned the opinion the appropriate weight.

### 2.    Dr. Jackson

In determining Plaintiff's RFC, the ALJ also considered the September 16, 2008 opinion of Dr. Jackson that Plaintiff was unable to "return to work at the present time" (Tr. 31).  In doing so, the ALJ found that Dr. Jackson's statement that Plaintiff was unable to work at that time was inconsistent with Dr. Jackson's findings during clinical examination, which did not reveal any disabling findings (*id.*).  Namely, the ALJ noted that during the September 2008 appointment with Dr. Jackson, Plaintiff reported overall her pain had improved by 40 percent with treatment with injections, she presented with normal gait and stood with no list, she was able to bend to knee level, and her motor strength examination was 5/5 (Tr. 31, 852-54).  Notwithstanding, Plaintiff contends the ALJ erred in considering Dr. Jackson's opinion that Plaintiff was unable to return to work.

Initially, an opinion as to whether a claimant is disabled or unable to work does not classify as a medical opinion, but rather constitutes an opinion on a matter reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  Accordingly, the ALJ need not afford such an opinion any special significance.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

---

[4]  Plaintiff contends that the ALJ should have re-contacted Dr. Burke to clarify her opinion.  Despite Plaintiff's contention, the ALJ did not need to re-contact Dr. Burke since enough evidence existed in the record to make a determination as to whether Plaintiff was disabled and since the ALJ could ascertain the basis for Dr. Burke's opinion.  20 C.F.R. §§ 404.1520b, 416.920b; *see* Social Security Ruling (SSR) 96-5p, 1996 WL 374183, *6 (S.S.A. July 2, 1996).

Given that Dr. Jackson's opinion did not constitute a medical opinion, and addressed an issue explicitly reserved to the Commissioner, the ALJ did not need to give any special significance to the opinion or afford it controlling weight.

Even so, the ALJ considered Dr. Jackson's opinion regarding Plaintiff's ability to work. In doing so, the ALJ found that the opinion conflicted with Dr. Jackson's own treatment notes, and the ALJ therefore had good cause to discredit Dr. Jackson's opinion. *Crawford*, 363 F.3d at 1159; *Phillips*, 357 F.3d at 1241. Indeed, Dr. Jackson initially saw Plaintiff as a consult from Dr. Castellvi for evaluation and treatment of low back pain and neck pain in April 2008 (Tr. 583-88). During the initial examination, Plaintiff had a normal gait and stood with no list and had worsened neck pain with forward flexion and extension, back pain with for with forward flexion, no additional pain upon neck axial loading of the spine, and back pain upon seat straight leg raises on both the left and right sides of her body (Tr. 584). Plaintiff had tenderness to palpation over her lower lumbar vertebral bodies and paraspinals bilaterally but was able to perform right toe walking, left toe walking, right heel walking, left heel walking, and inline walking (Tr. 586). Dr. Jackson found that Plaintiff had moderate bilateral low back pain, moderate bilateral leg numbness secondary to lumbar radiculitis, and mild to moderate bilateral sided neck and right shoulder pain secondary to cervical discogenic pain (*id.*). Accordingly, Dr. Jackson stated that Plaintiff could return to activity as tolerated, prescribed medication, and noted that Plaintiff needed steroid injections (Tr. 587).

Upon follow-up in September 2008, Plaintiff's condition had improved following a series of injections (Tr. 852). Namely, Plaintiff's pain had improved forty percent and her low back and

11

leg pain was moderate, but she experienced numbness down the lower extremities with decreased sensation of the anterior thighs (*id.*). During the examination, Dr. Jackson observed that Plaintiff had a normal affect, had a normal gait, stood with no list, could bend to knee level, had back pain on seated straight leg raises on the right and left, and had tenderness to palpation over her lower lumbar paraspinals bilaterally (*id.*). At that time, Dr. Jackson noted that Plaintiff had only mild to moderate pain in the lower back and leg with numbness secondary to discogenic pain and radiculitis (Tr. 853). Notwithstanding, Dr. Jackson stated that Plaintiff would be unable to return to work at that time and would continue her medications and be referred to physical therapy (*id.*).

During another follow-up appointment in October 2008, Plaintiff complained that her condition had worsened and she had a recent flare-up of pain and headaches (Tr. 849). Upon examination, Dr. Jackson observed that Plaintiff had a normal affect, walked with an antalgic gait, stood with no list, had full mobility of the neck, could bend to knee level, had neck pain that worsened with rotation, and had back pain bilaterally when performing seated straight leg raises (*id.*). Dr. Jackson found that Plaintiff had severe low back and leg pain with numbness secondary to discogenic pain as well as mild neck pain secondary to cervical dicogenic pain (Tr. 850). As part of Plaintiff's care plan, Dr. Jackson stated that Plaintiff would obtain an MRI of the cervical spine to rule out cervical cord compression and a large disc protrusion, he continued Plaintiff on her medication, he stated that Plaintiff would be referred to physical therapy if there was no contraindication on the cervical MRI, and he recommended Plaintiff use a single-point cane (Tr. 850-851). Dr. Jackson again stated that Plaintiff was unable to work at that time (Tr. 851).

Finally, in November 2008, Dr. Jackson examined Plaintiff, who had respiratory rate

12

within normal limits, normal affect, an antalgic gait, standing with no list, full mobility of the neck, and ability to bend to knee level but with neck pain worsened by rotation and tenderness to palpation over the right lower cervical paraspinal region (Tr. 1015).  After examining Plaintiff and reviewing her cervical spine MRI results, Dr. Jackson noted that Plaintiff had a stable examination without canal stenosis or disc herniation but noted a left-sided disc bulge at C3-4 (Tr. 1016).  Dr. Jackson found that Plaintiff had moderate low back and leg pain secondary to discogenic pain and mild neck pain secondary to cervical discogenic pain at the C3-4 and adjacent discs (*id.*).  Even though Dr. Jackson noted Plaintiff had essentially normal findings and had, at most, moderate pain, Dr. Jackson stated that Plaintiff was unable to work at that time and continued Plaintiff on her medication, referred her to physical therapy for cervical stabilizer and cervical traction, recommended she continue with lumbar physical therapy, and recommended a lumbar home traction unit (Tr. 1017).

As Dr. Jackson's treatment records indicate, Plaintiff demonstrated an ability to walk, bend, and stand and, with one exception, exhibited only mild to moderate pain in her neck and back (Tr. 583-88, 849-854, 1015-23).  These findings do not support Dr. Jackson's conclusion that Plaintiff was unable to work, either at the time of the examinations or for a continuous twelve-month period.[5]  Combined with the fact that Dr. Jackson's opinion as to Plaintiff's ability to work did not constitute a medical opinion, the ALJ properly considered Dr. Jackson's opinion

---

[5]  *See* 20 C.F.R. §§ 404.1505(a), 416.905(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. ...")

and substantial evidence supports his decision.[6]

### 3.    Dr. Loreto

In determining that Plaintiff retained the RFC to perform a limited range of sedentary work, the ALJ also relied upon the November 2009 opinion of Dr. Loreto that Plaintiff could perform less than sedentary work (Tr. 28, 1087).  Indeed, in providing her opinion, Dr. Loreto declined to state that Plaintiff was unable to perform any work whatsoever (Tr. 28).  Rather, Dr. Loreto opined only that Plaintiff could perform less than sedentary work, meaning that Plaintiff could not perform the full range of functions described under sedentary work (Tr. 1087).  As such, Dr. Loreto's opinion does not support a finding that Plaintiff's impairments precluded Plaintiff from performing all work or even her past work but that Plaintiff could not perform all of the functions described under sedentary work.  Dr. Loreto's opinion therefore supports the RFC finding set forth by the ALJ in his decision.

### B.    Credibility

In addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.  *See* 20 C.F.R. §§ 404.1529, 416.929.  In social security disability cases, credibility determinations fall within the province of the ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  Typically, the ALJ makes credibility determinations regarding Plaintiff's subjective complaints of pain and must

---

[6] Although the ALJ only mentions Dr. Jackson's September 2008 opinion regarding Plaintiff's ability to work, the subsequent treatment notes make essentially the same findings and express the same opinion as to Plaintiff's ability to work (Tr. 583-88, 849-854, 1015-23).

provide specific reasons for his credibility finding. *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote,* 67 F.3d at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

In this instance, when determining Plaintiff's RFC, the ALJ considered all of Plaintiff's symptoms and the extent to which they could reasonably consistent with the objective medical evidence and other evidence of record (Tr. 29). After summarizing Plaintiff's hearing testimony, the ALJ found that Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible in light of the findings made upon examination, especially given the inconsistencies between her allegations of disabled symptomatology and the objective medical evidence (Tr. 29). Further, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the findings of Plaintiff's treating and examining physicians and the medical evidence of record as a whole (Tr. 31). In support of his

15

findings, the ALJ cited a number of medical records and opinions, including but not limited to a December 2007 evaluation of Dr. Castellvi, an August 2007 consultation by Dr. Modh, a March 2008 pulmonary function study performed by Dr. Demmi, a May 2008 visual evaluation at the Tampa Eye Clinic, a November 2008 evaluation by Dr. Modh, a February 2009 physical examination by Dr. Ledoux-Coton, an August 2009 sleep study, and an April 2009 evaluation by Dr. Edgerton (Tr. 29-31).   These records, along with the other medical evidence of record, provide substantial support for the ALJ's credibility finding as to Plaintiff's subjective complaints.

For example, the records from Dr. Castellvi indicate that, in December 2007, Plaintiff had a normal affect, was alert, had a normal gait, stood with no list, had restricted rotation of the neck, had no additional pain upon neck axial loading of the spine, and had seated straight leg raises that were negative bilaterally (Tr. 592).   X-rays of the cervical spine were normal while X-rays of the lumbar spine showed L4-5 listhesis (Tr. 593).   Dr. Castellvi diagnosed Plaintiff as having cervical sprains and strains and spondylolisthesis and stated that Plaintiff could return to activity as tolerated but recommended that Plaintiff lose weight (Tr. 594).   Upon follow-up in February 2008, Dr. Castellvi noted that a cervical MRI showed Plaintiff had mild left-sided facet osteoarthritis at C3-C4 but was otherwise negative and that a lumbar MRI showed Plaintiff had grade 1 degenerative spondylolisthesis at L4-L5 associated with mild diffuse disc bulge (Tr. 589). Dr. Castellvi again noted that Plaintiff could return to activity as tolerated and recommended a referral to Dr. Jackson for diagnostic or therapeutic blocks (*id.*).

The records from Dr. Modh, a pulmonologist, indicate that, outside of some inspiratory

rales, Plaintiff had no abnormal findings upon examination and appeared to be stable neurologically (Tr. 1044). Dr. Modh determined that Plaintiff had pulmonary fibrosis, morbid obesity, obstructive sleep apnea, and polyarthralgia arthritis, with the possibility of collagen vascular disease needing to be ruled out, and suggested that Plaintiff lose weight, a repeat pulmonary function test with CT of the chest be performed, and a CAT scan and sleep study be performed (Tr. 1045). Following that, in December 2008 Dr. Modh performed a sleep study, which indicated that Plaintiff had sleep apnea with very disturbed sleep and very poor sleep efficiency but without periodic leg movements (Tr. 1042). Dr. Modh recommended another sleep study to determine the appropriate CPAP titration and recommended Plaintiff lose weight (Tr. 1043). Subsequently, Dr. Modh performed another sleep study in in August 2009, which indicated that Plaintiff's sleep apnea improved significantly with the CPAP machine at the correct level (Tr. 1053-54).

Furthermore, records from Dr. Ledoux-Coton from February 2009 show that, upon examination, Plaintiff's lungs were clear to auscultation bilaterally and she had no cyanosis or edema of the extremities, had erythema and swelling of the joints in the hands, had decreased range of motion in the biltaral shoulder, had no paravertebral spasms, had negative straight leg raising bilaterally, and had normal range of motion in the cervical, thoracic, and lumbar spine (Tr. 1064). Plaintiff was alert and oriented, had intact memory and concentration, had appropriate judgment and affect, had 5/5 strength bilaterally in the proximal and distal muscles of the upper and lower extremities with no tremor or rigidity, had decreased sensation distally in the four extremities, had a normal tandem walk, and had normal arm swing bilaterally (*id*.). Dr. Ledoux-

17

Coton determined that Plaintiff had numbness in the distal extremities with suspected peripheral neuropathy, likely due to her diabetes, as well as possible rheumatoid arthritis, diabetes, hypertension, sleep apnea, and hyperlipidiemia (Tr. 1065).  Among other things, Dr. Ledoux-Coton ordered nerve conductions of the four extremities and a rheumatology consultation (*id.*).

Given these findings and the other evidence of record, the ALJ appropriately found Plaintiff's subjective complaints not entirely credible. Although the record demonstrates that Plaintiff had severe impairments and was limited by those impairments, she was not limited to the degree that she reported.  As demonstrated above, therefore, substantial evidence supports the ALJ's credibility finding.

Notwithstanding, Plaintiff further contends that the ALJ failed to make a proper credibility finding because the ALJ did not address all of the subjective complaints reported by Plaintiff, including that she occasionally drops things due to numbness in her hands,  she could only walk twenty minutes and only sit twenty minutes at a time, she could not do any lifting frequently or occasionally, she has stopped engaging in social activities and hobbies, she has blurry vision and fatigue, and she does not perform any of the housekeeping tasks (Tr. 51-56).   As the Commissioner notes, however, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as the decision allows a reviewing court to conclude that the ALJ considered a plaintiff's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  Notably, however, many of the subjective complaints that Plaintiff points out were considered and addressed by the ALJ.  For instance, the ALJ found that Plaintiff had the severe impairment of blindness of the right eye (Tr. 19-28).  In determining the

18

RFC, the ALJ considered Plaintiff's ocular impairment and found that Plaintiff had worked with the eye impairment for years and that, although she was legally blind in her right eye, she had normal findings related to and 20/20 vision in her left eye (Tr. 30, 559).  As such, the ALJ considered Plaintiff's complaints regarding her vision problems and placed a limitation in the RFC that Plaintiff would be unable to perform jobs that require far acuity (Tr. 28).  Further, regarding her lack of social activities and hobbies, the ALJ found that Plaintiff's claims of depression did not constitute a severe impairment, she had only mild restrictions as to social functioning, and  the record did not reflect any mental health treatment (Tr. 19, 26, 31).  Accordingly, the ALJ properly considered Plaintiff's subjective complaints in rendering his decision.

Plaintiff also contends that the ALJ erred by not addressing the testimony of Plaintiff's third-party witness.  As to the testimony of Plaintiff's roommate, the ALJ did not err by failing to explicitly discredit it.  Where an ALJ fails to make an explicit credibility finding as to a third party's testimony or statements, a court need not find error if the credibility determination was implicit in the rejection of the claimant's testimony.  *Osborn v. Barnhart*, 194 Fed. App'x 654, 666 (11th Cir. 2006) (citation omitted).  Here, Plaintiff's roommate testified that Plaintiff's back goes out when she tries to lift anything, things fall out of Plaintiff's hands when she tries to grab them, Plaintiff is unable to walk a long distance or sit, Plaintiff is depressed, Plaintiff gets fatigued and suffers back pain if she stands too long, Plaintiff does not do anything around the house, Plaintiff has no hobbies, and Plaintiff can only sit for up to fifteen or twenty minutes before she needs to get up and walk around (Tr. 61-63).  This testimony correlates to that of

19

Plaintiff's testimony as far as the limitations Plaintiff suffers as a result of her impairments. Further, these limitations are encompassed by the ALJ's RFC finding.  Accordingly, though the ALJ could have, and perhaps should have, made an explicit credibility finding as to the third-party testimony, the ALJ clearly rejected Plaintiff's testimony regarding the disabling nature of her condition and thus implicitly yet clearly rejected the third-party testimony regarding the same. *See Osborn*, 194 Fed. App'x at 666.  As the ALJ based his credibility finding upon substantial evidence as set forth above, the ALJ did not err in that regard.

**IV.**

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 11th day of February, 2013.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

20

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. James D. Whittemore

Counsel of Record